UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

**SAMANTHA LAWS, individually, and**
on behalf of all others similarly
Situated,
**7794 Gardner Road**
**Georgetown, Ohio    45121**

    Plaintiff,

v.

**SAINT ELIZABETH MEDICAL CENTER, INC.,**
**dba SAINT ELIZABETH MEDICAL CENTER**
c/o Statutory Agent
 Robert M. Hoffer
 109th E. 4th St.
 Covington, KY 41011

**Defendant.**

CASE NO.

JUDGE

---

### COMPLAINT WITH JURY DEMAND

---

Samantha Laws ("Plaintiff"), on her own behalf and on behalf of all others similarly situated, tenders for filing her COMPLAINT against Defendant Saint Elizabeth Medical Center, Inc., dba Saint Elizabeth Medical Center ("Defendant" or "St. Elizabeth").

### INTRODUCTION

This action arises from Defendant's deceptive practice and policy of inflating bills of Ohio residents, when such patients are admitted to its facilities for routine medical matters, in order to subsidize procedures of Defendant's patients that have complications.  In doing so, Defendant's revenues increase as many of the patients with extremely high medical bills (aka outliers) do not pay their bills.  Plaintiff is one of what is believed to be thousands of patients residing in Ohio who received a bill from St. Elizabeth at their Ohio address that was inflated

over the correct amount determined by longstanding practically universal practice among American Hospitals, and, until recently, by Defendant itself. The scheme of Defendant is continuing. The Defendant's scheme has been purposeful and intended to result in unjust enrichment to Defendant. St. Elizabeth has perpetuated this scheme with the intent to deceive patients, benefit financially and be unjustly enriched.

## THE PARTIES

1. At all times relevant, Plaintiff was a resident of and domiciled in the State of Ohio and Brown County at the address mentioned in the caption.

2. At all times relevant, Defendant St. Elizabeth was a hospital authorized to provide medical services in return for revenues in the Commonwealth of Kentucky and operates hospitals in Kentucky, but advertises heavily to Ohio residents, and sent inflated bills to the Plaintiff (and proposed class members) in Ohio, which bills were paid in Ohio.

3. Venue for this action properly lies in the United States District Court for the Southern District of Ohio. This Complaint raises issues of Ohio Consumer Law, is confined to Ohio residents receiving inflated bills in Ohio, and jurisdiction arises under 28 USC §1331, diversity jurisdiction, as the amount in controversy is believed to be millions of dollars and the parties reside in different states. (A related action containing similar allegations to those in this Complaint was once filed in State Court in Kenton County, was subsequently removed to federal Court in Kentucky because of diversity and later dismissed without prejudice by the Court) (see Case number 21-CI-1401), filed in Kenton County Kentucky on September 21, 2021, and removed in case number 2:21-CV-00125, filed in the United States District Court for the Eastern District of Kentucky, Northern Division, and dismissed less than 4 months ago.[1]

---

[1] A separate class action suit representing Kentucky Plaintiffs is being filed today in Kenton County Kentucky. Two different lawsuits are necessary because of significant differences in Kentucky and Ohio consumer law.

**FACTS**

4. The Plaintiff, and each member of the proposed class, is an Ohio resident that received medical treatment from the Defendant's hospitals.

5. The Plaintiff, and each member of the proposed class, is an Ohio resident that possessed health insurance. The health insurance paid a portion of the Plaintiff's (and proposed class members.) bills from the Defendant, and the Defendant then, without notice to the plaintiffs or proposed class members, billed the insured Plaintiff or proposed class member, for that portion of each patient's bill not covered by insurance after improperly inflating the insurance bill with a cryptic and unprecedented line item called "HP variable adjustment".

6. St. Elizabeth targets Ohio citizens and does significant advertising in Ohio, targeting the Cincinnati area (its hospitals are less than ten miles from Cincinnati.)

7. Valerie Rose ("Rose") became a Revenue Enhancement Analyst at St. Elizabeth Medical Center. Defendant later changed her title to Revenue Integrity Analyst.

8. Rose worked at St. Elizabeth in the same department from 2007 through September of 2021 with the title of "Revenue Integrity Analyst".

9. Rose, as a Revenue Integrity Analyst, performed review of medical documents, hospital billing records, and validated the coding accuracy and appropriateness of services rendered to inpatients.

10. Rose's supervisor was Ed Fritz, Direct of Chargemaster (a system used for billing and coding by the Defendant).

11. Mr. Fritz' supervisor was Bill Banks, VP of Managed Care for the Defendant.

12. Rose was the only person at St Elizabeth who, at times here relevant, performed what

.

were called charge/defense audits, which are audits with insurance companies where Rose defended the Defendant's charges by providing documentation that services were performed.

13. Rose, in May of 2019, began independently writing down and documenting evidence of some of the allegations contained in this Complaint.

14. On or around April 15, 2021, Rose, along with Jenny Roberts, met with Mike Yadav. System Director Revenue Cycle Operations for the Defendant. The meeting was called because a patient called and said that she had "delivered a baby at St. Elizabeth, and my bill was over $30,000. I was there one or two nights, and I don't understand why my bill charges are so high."

15. Rose looked at this patient's bill and there was a charge for "all-inclusive". The charge was approximately $28,000.00. Given Rose's expertise in this particular area, the charge did not seem correct, and appeared unduly high.

16. Rose and Jenny Roberts did not yet understand what an all-inclusive charge constituted and whether the charge was correct. An email was sent to Bill Banks, and said "Do you know what this all-inclusive charge is?"

17. He replied, "Yes. This is part of our all-inclusive billing. If you need training, come see us."

18. Defendant actually launched "all inclusive billing" without even informing those working in their auditing department.

19. Mike Yadav trained Rose on "all-inclusive billing," the theory supporting it and how to implement "all-inclusive billing" in the Defendant's billing. The theory:

- The Defendant attempts to minimize audits. Audits are a lot of work. The Defendant tries to limit funds from being recouped unnecessarily. It takes a lot of time to pull the documentation to support the Defendant's charges being removed in itemized bill and defense audits. The volume is high on outlier claims.

- To offset the post payment audit volume, Bill Banks, on behalf of the Defendants implemented SLIP billing (single line inpatient billing). All the charges on the account are rolled into a single line on the UB. The purpose of SLIP billing was to prevent single line charges from being removed/denied by the payor. The Defendant referred to this as "all-inclusive" billing.
- St. Elizabeth sought the maximum DRG payment. DRG is a diagnosis related group. Payments are based on the DRG billed. They have set rates. Whatever the maximal DRG reimbursement is for that group (DRG), St. Elizabeth changes its charges to match that amount so that St. Elizabeth can get the maximum reimbursement, rather than simply adding up actual individual charges and billing on that basis.
- St. Elizabeth adds a one-line charge on the itemized bill (TX inquiry) called an "all-inclusive" rate in addition to the "true documented itemized" charges posted to that account.
- That charge is a variable charge that gets calculated and added automatically by the billing system at the direction of the Defendant. The system will add or remove charges to get them to match the maximum reimbursement for the DRG on the account once it has been coded. The actual revenue code used to bill for the maximum DRG charge is 0100, a code actually only properly used (as mapped by the agency producing such codes) for room and board plus all-inclusive for inpatient psychiatric care.

20. The Defendant's actions, as described above, are deceptive to Ohio patients, which naturally assume that St. Elizabeth is following its own time tested and usual billing practices, and those of other hospitals. The system is unique and unprecedented, varying from the hospital's own past practices and from that of all other known hospital practices in the country.

21. While Mike Yadav was providing training on "all-inclusive billing," Rose thought compassionately about St. Elizabeth's patients. For young mothers, young couples, and people

who are starting their careers - if St. Elizabeth's has a policy of increasing its billed charges from $7,000 to $30,000 in order to get to the maximum DRG, and their insurance plan pays (as is common) 80/20, and Rose noted that such patients would be responsible for 20 percent of that $30,000.

22. When Rose presented this question to Mike Yadav, Mike Yadav replied "Well, yeah they will be responsible for that, but it's not that much money." Rose thought; "you're sitting here making probably six figures. Who knows how much money you make, another $1,000, $2,000 on a co-pay isn't a big deal for you…. But when you have a young couple with a new baby and you've got the mother's account and the baby's account to pay for a co-pay, that's a lot of money! $500 can make or break a budget for a new couple."

23. Rose left her workstation around 5 p.m. on April 15, 2021.

24. On or around the time period she was leaving for the day, Rose noticed Ed Fritz working with a hospital IT employee, and overheard them planning on how to not show the "all inclusive" charge amount on the bill that went out to the patient.

25. Plaintiff Samantha Laws was a patient of St. Elizabeth hospital, whose son Rowan was born on November 23rd 2021.

26. Plaintiff received an unexplained "all-inclusive charge" of $27,000 on her bill of which she owed a patient balance, after her UHC insurance.

27. Plaintiff Samantha Laws had to pay the non-covered cost.

28. St. Elizabeth billed Plaintiffs for the inflated amounts based upon its new and unprecedented "all-inclusive billing" system. The Defendant's actions that resulted in "all-inclusive billing" in addition to being inaccurate were deceptive, and done without researching the financial effect on patients and without informing patients of the change to the billing system.

29.   The Defendant also engaged in the following deceptive practices with the Plaintiff, and with other proposed class members, during their visits to the Defendant and at the time Plaintiff and proposed class members received and paid their bills:

- Failing to follow the approved billing guidelines, and misusing a code intended for a narrow purpose for a much broader, improper purpose.
- Failing to research the effects of this new billing scheme on the patients in the Class.
- Failing to inform the patients in the class that St. Elizabeth had adopted a unique new billing system that would result in higher charges to them than the conventional system used by hospitals.

30.   Bill Banks, VP Managed Care of St. Elizabeth, created what he called a billing "scheme" in his initial email to Aetna proposing a variation of the current billing system, a variation that became "all-inclusive billing".

31.   St. Elizabeth put their actual prices of various diagnoses on their website, purportedly for the public and patients to view and review. While the "exit DRG" charges are, in fact, on the St. Elizabeth website if one knows how to look and clicks down about four levels, they are completely unhelpful to the average patient, who instead puts their trust in the fact that hospital will conform to the common and customary practices in the industry when billing, not some newly initiated unique billing scheme misusing a code meant for a narrower purpose to jack up prices. Generally, patients are not aware of what a DRG code is, much less that a discharge DRG can be different from the reason for admission DRG. Furthermore, many patients show up on an emergency basis, trusting, based on long industry practice, that the charges they receive for routine care will not be inflated to pay for outlier patients absent their informed consent.  If St. Elizabeth wanted donations for such outliers, it could solicit them, rather than unilaterally charging extra money to patients with routine DRGs.

32. St. Elizabeth implemented the "All-inclusive billing approach" in February 2021. The implementation of this practice was staggered with commercial payers over several months in 2021. Medicare and Medicaid claims were omitted from this practice. The All-Inclusive Billing/Pricing is being utilized on commercial claims, thus for payers who offer Medicare and Medicaid including Related/Replacement products.

33. The implementation of "all-inclusive billing" adds a variable unsubstantiated charge to the accrued itemized charges and then reports the altered bill total as a single line item under Rev code 0100 on the UB04 (a standard form used by providers).

34. The all-inclusive charge is a variable sliding scale charge added to the claims to achieve the desired pre-set billing threshold set by Defendant for that respective DRG. The predetermined threshold is believed to be determined by the maximum insurance reimbursement possible for that assigned DRG (diagnosis related group) for a non-outlier claim.

35. The variable "all-inclusive" charge is not supported or substantiated in the patient's documentation. Rather, it is a made-up charge to achieve the predetermined bill total. Every claim with the same assigned DRG is being billed at the exact same dollar amount.

36. No other hospital in the country is known to have adopted Defendant's billing "scheme," and, in fact, VP Banks calls it "unique" in his internal memorandum.

37. By adding the variable all-inclusive charge in addition to the true accrued charges reported on the itemized bill, claims are being falsely altered and many times depict duplicate bill totals. Falsely inflating the billed charges is creating substantial increases in out-of-pocket costs for most patients and alters their ability to meet deductibles and pay the inflated balances.

38. Patient co-pays and deductibles, including the calculations of usual and customary charges, write-offs are being falsely altered with this practice. Consistently, patients with all-inclusive

pricing pay variable, inaccurate amounts not truly based on services performed and products used.

39. The all-inclusive variable charges are added for services and products that were not performed; rather, they operate as a nonconsensual donation to patients with outlier claims.

40. The all-inclusive billing scheme results in a patient being billed for amounts without being provided a correlating medical service.

41. When Valerie Rose questioned the practice, she was told when someone complains they would adjust the bill. In other words, Defendant would only do the right thing if caught.

## DEFENDANT'S SCHEME

42. Defendants knowingly and in reckless disregard for the truth, acted in concert to devise an unlawful billing scheme, to collect the maximum amount of monies from patients.

43. As a result of said scheme, Defendant collected and retained such monies and was unjustly enriched, violated Ohio consumer law and violated the implied covenant of good faith and fair dealing.

## CLASS REPRESENTATIVE'S DAMAGES

44. As noted above, the extra bill owed by Plaintiffs because of the unprecedented and unique HP variable line billing exceeded $27,000.00.

45. Plaintiffs financial burden and amounts due will eventually have to be paid if not remedied through this litigation.

46. St Elizabeth Medical Center initiated a willful scheme initiated by Bill Banks, VP of Revenue Cycle (also claiming to be the "Architect") with the support and implementation of management with the full knowledge that this was not only a questionable payment methodology, not approved by governing and authorized entities that it would increase revenue

through upcoding and an unorthodox billing application.

47. Defendant creating an unauthorized, untested, and unique and unprecedented (no data, analytics, financial assessments) payment model. utilizing the all-inclusive charges and revenue code 0100, which is tantamount to an unfair and deceptive practice and a violation of the covenant of good faith and fair dealing.

48. St. Elizabeth made no efforts whatsoever to inform patients of their new billing system; in fact, eventually acted to conceal it by removing line item charges entirely from the bill received by the patient.

49. Patients charged the extra costs did not agree to being charged extra monies for the benefit of other patients or St. Elizabeth's bottom line.

50. Defendant claims they offered price transparency on their website but in fact:

☐ Defendant listed treatments, procedures with an unverifiable price, **without** the ability or for a patient to make a true or accurate calculation for the cost of care when reviewing the price listed (as no links or details appear.) Nor do patients have the expertise or ability to compare charges, when no other accessible hospitals use this method in any event.

☐ Defendant listed pricing is not clear, concise or verifiable, failures which make it deceptive to the public and to patients.

51. Defendant did not disclose they were using (2) coding and billing methodologies and reporting. (1) all-inclusive charges with line items- double billing) and (1) Single Line Billing (all-inclusive charges and Revenue code) to patients, nor that this billing method was a unique new scheme.

52. Defendant's radically new billing method, all-inclusive billing per DRG for inpatients has little net impact on insurers, who are contracted to pay by revenue codes up to a certain amount

per DRG, and some greater amount, (often .79% of adjusted charges), on outlier claims. For most claims insurers pay significantly less than their contractually agreed max charges per DRG; for a few, outlier claims, they pay far more.

53. However...for patients the calculation is quite different. Patients with giant outlier claims generally pay little, because they hit medical bankruptcy and/or Defendant writes off their charges. Most patients get overcharged by an underlying greater (variable) unsubstantiated charge on their copay (or self-pay, if applicable).

54. Even if the actual charge is theoretically available (several levels deep on the website) before patient goes into Defendant hospital, nobody informs them that Defendants have initiated a new and unique billing method that will greatly increase the copay of patients without complications. Thus, patients do not have a realistic opportunity to make an informed decision at the front end about what Defendants are doing, and the suppression of charges makes it impossible to detect on the back end, absent knowledge most laypeople do not have.

55. AIB is not "revenue-neutral" for Defendant hospital's patients. Whatever happens with commercial insurance payors, far more patients lose out by paying inflated self-pay and co-pay amounts. Patient amounts due on giant "outlier" claims are rarely paid in full, or even in great part. Medical bills are the leading cause of individual bankruptcies.

56. St. Elizabeth did NO research of the financial effect of the All-inclusive billing scheme on patients.

## CLASS ALLEGATIONS

57. Plaintiffs incorporate by reference each and every allegation in the paragraphs 1-56 above.

58. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class of all persons defined as follows: All current and former patients of St.

Elizabeth Medical Center, Inc. who are residents of the State of Ohio, whose bills were paid in full or in part by a private insurance payor, whose bills were inflated, by the addition of a variable charge so as to match the a selected reimbursement rated for Diagnosis-Related Groups ("DRG") through "All-Inclusive Billing" and incurred extra charges as a result.

59.  Excluded from the definition in the preceding paragraphs are: (1) Plaintiff's Counsel; (2) the Court or its staff; and (3) the Defendant, their agents, employees, officers, and attorneys.

60.  Plaintiff seeks certification for the Class for each Count herein. Certification of the Class of similarly situated persons to the named Plaintiff is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the named Plaintiff Samantha Law and the Class. The individual legal issues presented by the named Plaintiff require resolution of the common questions of law and fact: namely whether Defendant's conduct regarding its billing practices was a deceptive practice under Ohio consumer law, and whether it the violated the implied covenant of good faith and fair dealing.

61.  The Class which the named Plaintiffs seek to represent is too numerous to make joinder practicable.  It is expected that the number of affected persons in the class exceeds 5,000. Defendants' pattern and/or practices with regard to billing as to all-inclusive billing, make joinder impracticable.

62.  Prosecution of the claims of the named Plaintiff Samantha Laws will require the adjudication of questions of law and fact common to both their claims and those of the putative class they seek to represent. The common questions of law include, *inter alia*, whether Defendant's conduct was a deceptive practice under Ohio consumer law, and/or violated the implied covenant of good faith and fair dealing.

63.  The claims of the named Plaintiff proposed as class representative are typical of the claims

of the Class. The named Plaintiff assert claims in the categories of claims asserted on behalf of the Class. The relief sought by the named Plaintiff is also typical of the relief which is sought on behalf of the Class

64. The relief necessary to remedy the claims of the named Plaintiff is exactly the same as that necessary to remedy the claims of the Class members in this case. The named Plaintiffs seek the following relief for their claims for declaratory and injunctive relief, violation of the Ohio Consumer Sales Practices Act, and violation of the implied covenant of good faith and fair dealing for the class: (1) certifying this action as a Class Action, (2) awarding of compensatory damages, including all actual, exemplary, special, and statutory, and consequential, damages, including interest, in an amount to be proven at trial; (3) awarding and all reasonable and necessary attorney's fees and costs incurred in the prosecution of this action; and (4) awarding all other relief to which the members of the class are entitled, including a jury trial.[2]

65. The named Plaintiff'/Class Representative interests are co-extensive with those of the members of the Class in this case.

66. The named Plaintiff is willing and able to represent the Class fairly and vigorously as she pursues her similar individual claims in this action.

67. The named Plaintiff has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity. Class counsel will be Robert Croskery and Alan Statman. Counsel are qualified, competent and able to litigate the class claims and satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23, and have both previously served as class action counsel.

68. Defendants have acted on grounds generally applicable to the named Plaintiff and Class by

adopting and following systemic policies, practices and procedures applicable to the Class which include the acts, activities, omissions, and practices described herein.

69. The common issues of fact and law affecting the claims of the named Plaintiff and Class members, including, but not limited to, the common issues identified herein predominate over any issues affecting only individual claims.

a. A class action is superior to other available means for the fair and efficient adjudication of the claims of the named Plaintiff and members of the Class.

b. The cost, expense, and inconvenience of individual members of the Class having to prove the existence and operation of the Defendant's fraudulent billing practices makes it impracticable for the named Plaintiffs and members of the Class to control the prosecution of their claims individually.

70. The claims of the Plaintiff, as representatives of the Class, are typical and identical to those of the other Class Members. Plaintiff and Class Members are subject to the same scheme and course of conduct perpetrated by St. Elizabeth in its billing and mailing practices and Plaintiff is not aware of any claims or defenses that are or could be adverse or antagonistic to the claims of the other Class Members.

71. The named Plaintiff is unaware of the existence of any other litigation commenced by members of the Class that concern the matters at issue presented for adjudication in this action apart from the related matter referenced in the beginning of this Complaint and dismissed without prejudice, and a similar action representing only Kentucky Plaintiffs being filed in Kenton County, Kentucky based on Kentucky rather than Ohio consumer law, which state law varies in several material respects.

72. It is desirable to concentrate the litigation of the Class claims in this Court because of the

---

2 As the headquarters of St. Elizabeth are in Kentucky, the sister action filed in State Court seeks injunctive relief.

uniformity of the forthcoming decision on the common issues of law or fact, all Defendants are subject to the Court's *in personam* jurisdiction, and this Court is experienced in the resolution of class action claims.

73. Any difficulties likely to be encountered in the management of this action as a class action are surmountable.

## PROPOSED CLASS

74. All current and former patients of St. Elizabeth Medical Center, Inc. who are residents of the State of Ohio, whose bills were paid in full or in part by a private insurance payor, whose bills were inflated by the addition of a variable charge so as to match the selected reimbursement rated for Diagnosis-Related Groups ("DRG") through "All-Inclusive Billing", and who received and/or paid such bills in Ohio.

## CAUSES OF ACTION

### COUNT I: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING UNDER OHIO LAW

75. Plaintiff reincorporates and realleges paragraphs 1-74 as if fully rewritten herein. Defendant St, Elizabeth has a contract to provide medical services with each and every patient treated in its facilities.

76. The contract to provide medical services contains an implied covenant of good faith and fair dealing under Ohio law.

77. Defendant St. Elizabeth violated the implied covenant of good faith and fair dealing through the change in its billing practices, which was done contrary to the reasonable expectations that St. Elizabeth would inform them before changing its billing practices adversely to them and against the normal and expected practice of hospitals across the United States, and sending such inflated bills to residents of Ohio, knowing that such bills would be paid from Ohio.

78. Plaintiff and Class Members are entitled to compensatory damages, attorney's fees, and costs.

**COUNT II: PROMISSORY ESTOPPEL UNDER OHIO LAW (IN THE ALTERNATIVE TO COUNT I**

79. Plaintiff realleges and incorporate by reference paragraphs 1-74 as if fully rewritten herein.

80. St. Elizabeth holds itself out to the community as a reputable facility which provides "comprehensive and compassionate care that improves the health of the people we serve.[1]"

81. Part of St. Elizabeth's services include the representation and promise that patients will receive bills for services patients received at St. Elizabeth that are not deceptive and inflated.

82. Plaintiff and Class Members reasonably relied on that representation and promise when they patronized St. Elizabeth for their care.

83. In reliance on St. Elizabeth's promise and representation, Plaintiff and Class Members incurred obligations and/or paid the bills they received from St. Elizabeth, such bills being transmitted to Ohio and paid in Ohio.

84. Plaintiff and Class Members' reliance upon St. Elizabeth's promises and representations was reasonably foreseeable.

85. Because they paid bills that were deceptive and inflated, Plaintiff and Class Members relied upon St. Elizabeth's promises and representations to their detriment, and as a direct and proximate result of St. Elizabeth's breach of these promises, representations, and agreements, Plaintiff and Class Members have suffered damages in the amount of the difference between the real amount they should have been billed and the amount actually billed and obligations incurred/paid.

86. Only by enforcing the promises and representations that St. Elizabeth made to Plaintiff and Class Members when it held itself as a reputable facility can injustice be avoided. As such,

Plaintiff and Class Members are entitled to compensatory damages, attorney's fees, and costs.

**COUNT III: UNJUST ENRICHMENT UNDER OHIO LAW (IN THE ALTERNATIVE TO COUNT I)**

87. Plaintiff realleges and incorporates by reference paragraphs 1-74 as if fully rewritten herein.

88. Plaintiff and Class Members have been charged amounts in excess of what they should have paid for services received at St. Elizabeth had the bills they received and/or paid in Ohio not been deceptively inflated.

89. St. Elizabeth elaborated a deceptive scheme, practice and policy to inflate bills for services rendered to Plaintiff and Class members with the knowledge that Plaintiff and Class Members had no way of knowing that the bills they received were so inflated.

90. As a result of this fraudulent scheme, deceptive practice and policy, St. Elizabeth has been unjustly enriched at the expense of Plaintiff and Class Members.

91. Plaintiff and Class Members are entitled to recover damages as a result of St. Elizabeth's unjust enrichment including the return of all revenues obtained by St. Elizabeth as a result of their fraudulent scheme, practice and policy of inflating their patients' bills.

**COUNT IV: VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT, §1345.01 ET. SEQ. O.R.C.**

92. Plaintiff realleges and incorporate by reference paragraphs 1-74 as if fully rewritten herein.

93. St. Elizabeth's billing services rendered to Plaintiff and to class action members constitute a "consumer transaction" as a "supplier" as defined in §1345.01 O.R.C..

94. St. Elizabeth's failure to inform its Ohio patients of its sudden and unique departure from past billing practices as described above, and failure to include actual line item charges on the bill in an attempt to hide its new practices, constituted unfair, deceptive and unconscionable acts and practices in violation of §1345.03(B) O.R.C. (through taking advantage of consumers ignorance, charging prices in excess of those normal in the industry, and having one-sided terms,

and such additional violations as may become evident in discovery.

95. §1345.09(B) O.R.C. provides that such violations referenced in the preceding paragraph may be brought as a class action.

96. St. Elizabeth, through its agents and employees, was fully aware of its acts, actions, and omissions constituting unfair and deceptive practices and knowingly committed the unfair, deceptive and/or unconscionable acts and practices described above.

97. St. Elizabeth's actions were not the result of any bona fide errors.

98. As a result of St. Elizabeth's unfair, deceptive, and unconscionable acts and practices, Plaintiff and Class Action Members has suffered and continue to suffer damages, which include, but are not limited to the following:

a. Loss of money paid

b. Emotional distress.

99. Under §1345.09(B) O.R.C. Plaintiff is entitled to actual damages, reasonable attorney's fees and costs incurred, and statutory damages. Such damages vary according to whether Plaintiff is appointed as a Class Representative; if not so appointed, Plaintiff seeks maximum statutory individual damages and her reasonable attorney fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the court enter an order:

1. Certifying this action as a Class Action;

2. Entering judgment in favor of Plaintiff and awarding to Plaintiff and Class Members compensatory, all actual, exemplary, special, and statutory, and consequential, damages, including interest, in an amount to be proven at trial;

3. Awarding Plaintiff and Class Members all reasonable and necessary attorney's fees and

costs incurred in prosecution of this action, and

4. Awarding Plaintiff and Class Members all other relief to which Plaintiff and Class Members are entitled, including a jury trial.

Respectfully submitted,

/s/ *Robert F. Croskery*
Robert F. Croskery (#86402)
Croskery Law Offices
The Highland Towers, No. 2200
Cincinnati, Ohio 45202
(513)232-5297
rcroskery@croskerylaw.com

*/s/ Alan Statman*
Alan Statman (#0012045)
Statman Harris, LLC
35 E. 7th Street, Suite 315
Cincinnati, Ohio 45202
Tel: 513 621-2666
Fax: 513 621-4896
sderrien@statmanharris.com
ajstatman@statmanharris.com
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs make a demand for a jury under all claims triable to a jury.

/s/ Robert F. Croskery
Robert F. Croskery (#0064802)