**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SAMANTHA LAWS, *et al., individually, and on behalf of all others similarly situated,* | : | |
| *Plaintiffs*, | : | Case No. 1:24-cv-00486 |
| vs. | : | Judge Jeffery P. Hopkins |
| SAINT ELIZABETH MEDICAL CENTER, INC., | : | |
| *Defendant*. | : | |

**OPINION AND ORDER**

Plaintiff Samantha Laws ("Plaintiff" or "Laws") brings this putative class action against Defendant Saint Elizabeth Medical Center, Inc. ("Defendant" or "St. Elizabeth"), challenging its alleged use of an "all-inclusive billing" method for certain commercially insured inpatient hospital services. This matter is before the Court on St. Elizabeth's Motion to Strike Class Allegations from the Second Amended Complaint (Doc. 45). Laws filed a response in opposition (Doc. 46), and St. Elizabeth filed a reply (Doc. 47). For the reasons set forth below, the Court **GRANTS** St. Elizabeth's Motion to Strike Class Allegations from the Second Amended Complaint (Doc. 45). The Court **STRIKES** the class allegations in Plaintiff's Second Amended Complaint (Doc. 41).

## I. BACKGROUND

Laws filed the operative Second Amended Complaint on April 29, 2025, asserting various claims under state and federal law relating to St. Elizabeth's alleged use of an "all-inclusive billing" method for certain commercially insured inpatient hospital services. Am. Compl., Doc. 41. Her allegations derive in part from information attributed to Valerie Rose,

a former St. Elizabeth employee who conducted charge-defense audits for St. Elizabeth. *Id.* ¶¶ 10–24. Rose allegedly provided insurers documentation supporting St. Elizabeth's charges and reported through St. Elizabeth's chargemaster and managed-care departments. *Id.* ¶¶ 10–12. According to Plaintiff, St. Elizabeth began using all-inclusive billing for commercial payers in early 2021 but did not use that approach for Medicare or Medicaid claims. *Id.* ¶ 32. Laws alleges that, after assigning an inpatient account to a diagnosis-related group ("DRG"), St. Elizabeth added a variable "all-inclusive" charge to the account's accrued itemized charges. *Id.* ¶¶ 19, 33–35. The alleged variable charge brought the total account charge to a selected DRG-related amount, which Laws alleges reflected the maximum available insurance reimbursement rather than the documented services and products provided during the admission. *Id.* ¶¶ 19, 34–35, 39–40.

Laws alleges that St. Elizabeth reported the adjusted total as a single charge under revenue code 0100 on a UB04 claim form. *Id.* ¶¶ 19, 33. She maintains that the variable charge was not tied to an individual patient's documented services or products, but instead was added to reach a predetermined total. *Id.* ¶¶ 35, 39–40. Laws further alleges that this practice increased the cost-sharing obligations of certain commercially insured patients, including deductibles, copayments, and other out-of-pocket amounts. *Id.* ¶¶ 21, 37–38, 53, 55. Laws contends that St. Elizabeth did not disclose either the alleged billing-method change or the claimed use of a variable charge to reach a selected DRG-related amount. *Id.* ¶¶ 28–29, 47–51, 54. The Second Amended Complaint acknowledges that St. Elizabeth posted certain diagnosis-related prices online. *Id.* ¶ 31. Laws alleges, however, that those materials did not adequately disclose the alleged all-inclusive billing methodology and were not readily understandable or accessible to patients, particularly because patients generally do not

understand DRG codes and a final DRG may differ from an admission diagnosis. *Id.* ¶¶ 31, 50, 54.

Laws received inpatient care from St. Elizabeth in connection with the birth of her son on November 23, 2021. *Id.* ¶ 25. She alleges that her bill included an unexplained all-inclusive charge of approximately $27,000. *Id.* ¶¶ 26, 44. After applying Laws' United Healthcare coverage, Laws allegedly paid the portion of the bill not covered by insurance. *Id.* ¶¶ 26–27, 44–45. She attributes her remaining patient responsibility and alleged loss to St. Elizabeth's all-inclusive billing method. *Id.*

Laws seeks to represent:

> All current and former patients of St. Elizabeth Medical Center, Inc. who are residents of the State of Ohio, whose bills were paid in full or in part by a private insurance payor, whose bills were inflated, by the addition of a variable charge so as to match the a [sic] selected reimbursement rated for Diagnosis-Related Groups ("DRG") through "All-Inclusive Billing," and incurred extra charges as a result.

*Id.* ¶ 62. The proposed class excludes Laws' counsel, the Court and its staff, and St. Elizabeth and its personnel and counsel. *Id.* ¶ 63. Laws alleges that the proposed class includes more than 5,000 persons. *Id.* ¶ 65.

The Second Amended Complaint asserts six claims arising from these allegations: breach of the implied covenant of good faith and fair dealing under Ohio law; unjust enrichment under Kentucky law; unjust enrichment under Ohio law pleaded in the alternative; violation of the Ohio Consumer Sales Practices Act ("OCSPA"); fraudulent concealment under Kentucky common law; and fraudulent concealment under Ohio common law. *Id.* ¶¶ 79–121. Laws seeks class certification, declaratory and injunctive relief, damages, interest, attorney's fees and costs, and other appropriate relief. *Id.* ¶¶ 68, 73, 77.

On May 8, 2025, St. Elizabeth moved to strike Laws' class allegations before class certification. Docs. 43, 43-1. St. Elizabeth argues that Laws cannot satisfy Rule 23 because the claims require individualized inquiries into the services provided, assigned DRG, effect of the billing method on each account, patient knowledge and communications, insurance coverage and payments, and claimed injury. Doc. 43-1, PageID 1800–07. St. Elizabeth also relies on *York v. Saint Elizabeth Med. Ctr., Inc.*, No. cv 21-125-DLB-CJS, 2024 WL 1723073, at *10 (E.D. Ky. Apr. 22, 2024), which denied certification of a proposed class challenging substantially similar all-inclusive billing practices. *Id.* at PageID 1795–1800. St. Elizabeth further argues that Plaintiff cannot pursue an OCSPA claim on behalf of a class because the Second Amended Complaint does not identify a qualifying prior-notice predicate under Ohio Revised Code § 1345.09(B). *Id.* at PageID 1808–12. Plaintiff opposes the motion. Docs. 46, 48. The motion is ripe for consideration.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 governs class actions. A plaintiff seeking certification must satisfy Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequacy of representation—and at least one provision of Rule 23(b). *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011). A proposed damages class under Rule 23(b)(3) must additionally establish predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). Rule 23(c)(1)(A) requires courts to determine class-certification issues "[a]t an early practicable time," and Rule 23(d)(1)(D) authorizes an order requiring amendment of pleadings to eliminate allegations concerning representation of absent persons. Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D). Courts may therefore strike class allegations before discovery or a class-certification motion where the complaint itself establishes that the proposed class cannot

satisfy Rule 23 and further discovery would not cure the defect. *Pilgrim*, 660 F.3d at 949; *Smith v. Cash Am. Int'l, Inc.*, No. 1:15-cv-00760-MRB, 2019 WL 2352921 (S.D. Ohio June 4, 2019). The Court must nevertheless conduct the "rigorous analysis" Rule 23 requires. *Pilgrim*, 660 F.3d at 949 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). The question at this stage is thus limited: whether the Second Amended Complaint reveals a legal or structural defect in the proposed class that factual development could not cure.

## III. LAW AND ANALYSIS

### A. The *York* Decision

St. Elizabeth relies on *York*, 2024 WL 1723073, at *4–10, in which U.S. District Judge David L. Bunning denied certification of a proposed class challenging St. Elizabeth's all-inclusive inpatient billing practices. Doc. 45-1, PageID 1849–53. St. Elizabeth argues that *York* involved substantially the same billing practice, former-employee allegations, proposed class counsel, and theory of class wide injury. *Id*. at PageID 1851. Plaintiff correctly notes that *York* does not bind her. Plaintiff was not the representative in *York*, the proposed class was never certified, and the case was later voluntarily dismissed without prejudice. Doc. 46, PageID 1893–96; *see Smith v. Bayer Corp.*, 564 U.S. 299, 313–16 (2011) (unnamed members of an uncertified class are not parties for purposes of preclusion). The Court must therefore independently evaluate Plaintiff's Ohio class allegations and the remaining claims in this case. *See* Am. Compl., Doc. 41, ¶¶ 62, 78–121.

But the subsequent dismissal does not render the certification ruling a nullity. Judge Bunning decided a pending motion to modify a class in a formerly active case; the later dismissal did not vacate that ruling. *York*, 2024 WL 1723073, at *1. Nor was the ruling advisory merely because it considered an amended pleading proposed by the plaintiff. The

certification motion presented a concrete Rule 23 question in a pending case, and a court's Rule 23 analysis properly considers the claims, proposed class, and evidence offered in connection with certification. Fed. R. Civ. P. 23(c)(1)(A); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Although nonbinding, *York* remains relevant for its persuasive value. The Supreme Court has stated that federal courts should apply principles of comity when considering another federal court's class-certification decision "addressing a common dispute." *Smith*, 564 U.S. at 317. *York* is therefore a useful point of comparison because it examined substantially similar allegations concerning St. Elizabeth's all-inclusive billing practice as in the instant case. Am. Compl., Doc. 41, ¶¶ 62, 78–121; *York*, 2024 WL 1723073, at *4–10.

**B. Plaintiff Cannot Maintain an OCSPA Claim on Behalf of the Proposed Class**

The Court begins with Count IV, Plaintiff's claim under the Ohio Consumer Sales Practices Act, Ohio Revised Code Chapter 1345. Unlike St. Elizabeth's broader Rule 23 arguments, the availability of class wide relief under the OCSPA depends on a statutory precondition that Plaintiff must first satisfy to pursue that claim on behalf of absent class members. Ohio Revised Code § 1345.09(B) authorizes class relief where the challenged violation "was an act or practice declared to be deceptive or unconscionable," before the relevant consumer transaction occurred, either by a rule adopted under Ohio Revised Code § 1345.05(B)(2) or by an Ohio court decision made available for public inspection under § 1345.05(A)(3). *See* Ohio Rev. Code § 1345.09(B). The statute permits the consumer to pursue "damages or other appropriate relief in a class action" only where this prior-notice condition is met. *Id.*

The Supreme Court of Ohio has held that § 1345.09(B) requires a plaintiff seeking OCSPA class certification to establish that the defendant's alleged conduct is "substantially similar" to an act or practice previously declared deceptive or unconscionable through one of the statute's specified mechanisms. *Marrone v. Philip Morris USA, Inc.*, 2006-Ohio-2869, ¶¶ 2, 23–24. "'Substantial similarity' means a similarity not in every detail, but in *essential circumstances or conditions*." *Id.* ¶ 24 (emphasis added). The requirement is intended to ensure that a supplier had notice, before the transaction, that specific conduct at issue was prohibited; a general rule against unfair, deceptive, or unconscionable conduct is insufficient. *Id.* ¶¶ 23–24. "If a plaintiff fails to identify a rule or case in [the] complaint that satisfies Section 1345.09(B), dismissal of the claim as a class action is proper[.]" *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 869 (S.D. Ohio 2012).

Laws alleges that St. Elizabeth's all-inclusive billing system violates the OCSPA because St. Elizabeth allegedly failed to disclose a new billing practice, used a variable charge to increase certain commercially insured patients' bills, and failed to refund alleged overcharges. Am. Compl., Doc. 41, ¶¶ 93–105. Laws contends that the Ohio Attorney General's Public Information File contains matters (identified as "PIF" numbers 3611, 3638, and 14523)[1] that provided St. Elizabeth with the notice required by § 1345.09(B). *Id.* ¶¶ 58, 96. Laws alleges that the cited PIF materials stand for broad propositions that a supplier acts unfairly or deceptively by failing to disclose information likely to cause substantial consumer injury or by using superior knowledge to sell goods or services at prices higher than available from competitors. *Id.* ¶ 58. Those generalized propositions do not identify an act or practice substantially similar to Laws' allegations that St. Elizabeth used a DRG-based all-inclusive

[1] In her response, Plaintiff corrects the third PIF number from 14523 to 1423. *See* Doc. 46, PageID 1904.

billing system, added a variable charge after coding to reach a selected billing amount, and allegedly did not disclose the system to commercially insured inpatients. *Id.* ¶¶ 19, 28–40, 47–55, 95, 99–102. "To permit a generic rule to constitute prior notice for purposes of R.C. 1345.09(B) would allow *any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice." *Marrone*, 2006-Ohio-2869, ¶ 23 (emphasis in original).

Further, the cited PIF materials themselves do not cure this deficiency. PIF No. 3611 is a default judgment addressing alleged pandemic-era price gouging in retail sales of consumer goods, including hand sanitizer and respirator masks. Doc. 45-1, PageID 1862–64. The Court assumes, without deciding, that the default judgment is a qualifying Ohio court determination within the meaning of § 1345.09(B). Even with that assumption, it does not provide the required prior notice. The default judgment concerns alleged excessive pricing for retail goods during a public-health emergency. Laws' OCSPA theory, by contrast, concerns St. Elizabeth's alleged nondisclosure and use of a DRG-based, all-inclusive billing methodology for inpatient hospital services; use of a post-coding variable charge to increase bills to certain commercially insured patients; and retention of alleged overpayments. Am. Compl., Doc. 41, ¶¶ 19, 28–40, 47–55, 93–105.

Those distinctions go to the essential circumstances and conditions of the respective practices. The matters involve different supplier-consumer relationships, transactions, products and services, pricing mechanisms, claimed representations or omissions, and alleged sources of injury. The default judgment's determination concerning alleged emergency-related pricing of retail masks and sanitizer therefore did not provide St. Elizabeth with notice

that the hospital billing practices alleged here had been declared deceptive or unconscionable. *See Marrone*, 2006-Ohio-2869, ¶¶ 23–24.

PIF No. 3638 is an Assurance of Voluntary Compliance. It is not an Attorney General rule adopted under § 1345.05(B)(2), and Laws does not identify it as a judgment or supporting opinion by an Ohio court determining that a specific act or practice violated § 1345.02, 1345.03, or 1345.031. It therefore does not supply either type of prior-notice predicate specified in § 1345.09(B). *See* Ohio Rev. Code §§ 1345.05(A)(3), 1345.09(B). In any event, PIF No. 3638 concerns alleged pandemic-era price gouging of retail consumer goods. For the reasons stated with respect to PIF No. 3611, such conduct is not substantially similar, in its essential circumstances or conditions, to the alleged hospital billing practices at issue. *See Marrone*, 2006-Ohio-2869, ¶¶ 23–24.

PIF No. 1423 is a consent judgment. The parties have not identified a controlling Ohio decision resolving whether a consent judgment constitutes a court determination for purposes of § 1345.09(B). *Compare Charvat v. Telelytics, LLC*, 2006-Ohio-4623, ¶ 43 (10th Dist.) (treating a consent judgment as containing "an act or practice determined by a court"), *with Vuyancih v. Jones & Assn. Law Group, LLC*, 2018-Ohio-685, ¶¶ 13–15, *and Frank v. WNB Group, LLC*, 2019-Ohio-1687, ¶¶ 17–18 (reasoning that a consent judgment ordinarily records the parties' agreement and does not necessarily establish a "judicial 'determination' that a violation has occurred").

The Court need not resolve that question. Even assuming PIF No. 1423 qualifies as a court determination under § 1345.09(B), it does not involve conduct substantially similar to the alleged billing practices in this case. The consent judgment concerns the unauthorized switching of consumers' long-distance carriers, forgery of consumers' signatures on letters of

authorization, and misleading representations about whether a consumer's telephone carrier would change or the attributes of telecommunications services.

Those telecommunications-sales practices are materially different from the alleged nondisclosure and use of a DRG-based all-inclusive hospital billing method, post-coding variable charges, commercial-insurance billing, and alleged refusal to refund overpayments identified in Plaintiff's Second Amended Complaint. Am. Compl., Doc. 41, ¶¶ 19, 28–40, 47–55, 93–105. The differences concern the very circumstances that define the transaction: the service supplied, the supplier-consumer relationship, the alleged deception, the billing or pricing mechanism, and the asserted injury. Under *Marrone*, the general fact that both matters can be characterized as involving an alleged misrepresentation or consumer financial harm does not establish substantial similarity. *See Marrone*, 2006-Ohio-2869, ¶¶ 23–24.

Accordingly, PIF No. 3638 is not a qualifying predicate under § 1345.09(B). And even assuming PIF Nos. 3611 and 1423 qualify, neither addresses conduct substantially similar to the alleged hospital-billing practices. Laws therefore has not identified a qualifying prior-notice predicate under § 1345.09(B) and the class allegations in Count IV of the Second Amended Complaint must be stricken.

### C. Plaintiff's Individual OCSPA Claim

St. Elizabeth separately argues that Plaintiff cannot represent a class asserting an OCSPA claim because Laws' own claim is barred by the two-year OCSPA statute of limitations. Doc. 45-1, PageID 1864–66. An OCSPA claim must generally be brought within "two years after the occurrence of the violation." Ohio Rev. Code § 1345.10(C). Plaintiff alleges that she received care in connection with the November 23, 2021, birth of her son, that St. Elizabeth included an all-inclusive charge of approximately $27,000 on her bill, and that

she paid the non-covered amount. Am. Compl., Doc. 41, ¶¶ 25–27, 44–45. Laws filed this action in September 2024. Compl., Doc. 1. Laws contends that St. Elizabeth's alleged failure to disclose its billing system and failure to refund the asserted overcharge constitute continuing OCSPA violations. Am. Compl., Doc. 41, ¶¶ 95, 102; Doc. 46, PageID 1903.

The Court need not resolve whether Laws' continuing-violation theory preserves her individual OCSPA claim. Laws' failure to plead a qualifying § 1345.09(B) predicate independently prevents her from maintaining Count IV on a class wide basis. The Court therefore declines to decide, on the present motion, whether Laws' individual claim is time barred or whether the alleged failure to refund amounts to a new and discrete OCSPA violation. Because the Court strikes the class allegations as to Count IV for failure to satisfy § 1345.09(B), it need not determine whether Plaintiff's alleged limitations defense independently defeats her typicality or adequacy as to that claim.

**D. Plaintiff's Remaining Class Allegations**

St. Elizabeth asks the Court to strike the class allegations associated with Plaintiff's remaining claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraudulent nondisclosure. Doc. 45-1, PageID 1853–61; Am. Compl., Doc. 41, ¶¶ 79–92, 107–21. St. Elizabeth contends that resolving those claims would require patient-specific inquiry into the care received, DRG assigned, effect of the alleged all-inclusive billing practice, disclosures and information available to the patient, insurance coverage, payment history, and resulting injury. Doc. 45-1, PageID 1853–61. Laws responds that the claims arise from one common alleged practice: St. Elizabeth's purported use of a variable all-inclusive charge to increase bills and maximize insurance reimbursement without adequately disclosing that practice. Doc. 46, PageID 1897–1902.

*1. Typicality*

Laws alleges that St. Elizabeth used a common "all inclusive" billing system that included a variable charge. Am. Compl., Doc. 41, ¶¶ 18, 24. According to Laws, St. Elizabeth used that charge to bring certain claims to a preset value, shift the cost of outlier claims, and inflate commercially insured patients' bills. *Id.* ¶¶ 19, 28–40, 62, 67, 74. Laws therefore maintains that her claims are typical because every putative class member was an inpatient subject to the same alleged billing method and suffered the same basic injury: being charged more than the patient allegedly would have been charged under conventional billing practices. Doc. 46, PageID 1897–99.

Rule 23(a)(3) requires that a proposed representative's claims be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when the representative's claims are fairly encompassed by the claims of absent class members, such that the representative's claim will "rise or fall" with those of the class. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852–53 (6th Cir. 2013). The requirement does not demand identical factual circumstances or identical damages.

Courts have found typicality lacking when the proposed representative and class members were exposed to a common alleged practice, but liability depended on individualized facts concerning the transaction, the claimant's understanding, or the claimant's injury. In *Stout v. J.D. Byrider*, the plaintiffs alleged common misconduct in the sale, financing, repair, and warranty of used vehicles. 228 F.3d 709, 717 (6th Cir. 2000). The Sixth Circuit nonetheless upheld denial of certification because the claims depended on differences in the vehicles sold, repairs requested and performed, purchasers' responses to repairs, individual transactions, purchasers' understandings of their agreements, and the

nature and extent of injury. *Id.* Those distinctions were material because proving one purchaser's claim would not prove the claims of the others. *Id.*

Laws' pleaded claims require the same individualized investigation. Count I alleges that St. Elizabeth breached the implied covenant of good faith and fair dealing by changing its billing method contrary to Plaintiff's and class members' "reasonable expectations" and by failing to disclose the asserted change. Am. Compl., Doc. 41, ¶ 81. But the Amended Complaint does not identify a uniform contract or contractual term requiring St. Elizabeth to employ one particular billing practice for every putative class member. *See id.* ¶¶ 79–82. Whether St. Elizabeth acted contrary to a particular patient's reasonable expectations would depend on that patient's admission and financial-responsibility documents, communications and price information received, medical services, insurance arrangements, prior dealings, and other circumstances surrounding the transaction.

Laws' unjust-enrichment claims likewise seek recovery of the difference between the amount each patient allegedly should have been billed and the amount that patient was billed, obligated to pay, or paid. *Id.* ¶¶ 84, 87, 90, 92. Thus, the alleged common billing system does not itself establish that every patient was overbilled, conferred a benefit on St. Elizabeth, or suffered the same injury. Those issues would require examination of the services provided, the patient's DRG, the asserted billing method's effect on the patient's account, insurance and reimbursement arrangements, contractual adjustments, and the amounts paid or owed by the patient. *See id.* ¶¶ 19, 28–40, 84, 87, 90, 92. Those matters bear on liability and injury, not merely the calculation of damages.

The fraudulent-nondisclosure counts further require individualized inquiry. Laws alleges that St. Elizabeth failed to disclose an assertedly new billing method and that patients

trusted St. Elizabeth to follow customary billing practices. *Id.* ¶¶ 31, 107–21. Whether an individual patient relied on the alleged omission, however, depends on the patient's knowledge, communications with St. Elizabeth or others, available pricing information, understanding of the billing process, and whether disclosure would have affected the patient's decision or caused injury. *See Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013) (fraudulent concealment requires duty, nondisclosure, reliance, and damages).

*York* is particularly instructive because it involved the same hospital system, substantially similar all-inclusive billing allegations, and the same contention that a common billing practice made the representative's claim typical of all inpatients' claims. *York*, 2024 WL 1723073, at *4. The court rejected that position. It held that typicality was lacking because patients differed in "the type of medical care received," "the reason for the care," "the effect of the billing scheme on the member's bill," and "what information they had about what they might be charged." *Id.* The court also concluded that individual patients could have different understandings of the billing arrangement, meaning the named plaintiff's claim and absent members' claims would not "rise and fall together." *Id.*

Those same differences are inherent in Laws' allegations. Laws alleges that the challenged variable charge operates differently depending on the claim and produces injury through its effect on a particular patient's bill, obligation, or payment. Am. Compl., Doc. 41, ¶¶ 19, 28–40, 84, 87, 90, 92. Plaintiff also bases her claims on asserted reasonable expectations and an alleged lack of disclosure—issues that necessarily turn on information received and understood in each patient's transaction. *Id.* ¶¶ 31, 79–82, 107–21. Accordingly, although Laws alleges a common billing practice, proof of her own alleged injury would not necessarily

establish the contractual expectations, unjust enrichment, reliance, or injury of every other proposed class member. *See Stout*, 228 F.3d at 717; *York*, 2024 WL 1723073, at *4. Plaintiff has therefore not plausibly alleged typicality under Rule 23(a)(3).

2. *Predominance of Common Questions*

Laws likewise fails to plausibly allege that common questions predominate over individual ones. Rule 23(b)(3) requires a plaintiff to establish that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). It is more demanding than commonality under Rule 23(a)(2), which requires only one common question. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012). The Court must identify the substantive issues that will control the outcome of the claims and determine whether they can be proved with evidence common to the class. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017); *Woodall v. Wayne Cnty.*, No. 20-1705, 2021 WL 5298537, at *7 (6th Cir. Nov. 15, 2021).

Plaintiff identifies one common factual issue: whether St. Elizabeth used an allegedly undisclosed all-inclusive billing methodology that imposed a variable charge on patient accounts to maximize available insurance reimbursement. Doc. 46, PageID 1900–02. Laws contends that the availability of a DRG price on St. Elizabeth's website does not defeat class treatment because the asserted wrongdoing was not merely a failure to disclose a price. Rather, Laws alleges that St. Elizabeth did not tell patients that it had adopted a new and allegedly atypical billing method; did not disclose that the method used a variable amount to

reach an "arbitrary maximized insurance number"; and did not disclose that the methodology allegedly produced charges higher than those generated through conventional billing. *Id.* at PageID 1900–01.

Whether St. Elizabeth used the alleged billing practice, whether the practice was applied uniformly, and whether standardized disclosures adequately described the practice could potentially be addressed with common evidence. But the common question Laws identifies does not resolve the elements of the claims that remain. Laws' Second Amended Complaint seeks class wide relief for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraudulent nondisclosure. Am. Compl., Doc. 41, ¶¶ 79–92, 107–21. The Court therefore must determine whether the elements of those claims—not simply the existence of a common billing practice—can be established through class wide proof. *Sandusky Wellness*, 863 F.3d at 468; *Woodall*, 2021 WL 5298537, at *7.

Laws' fraudulent-nondisclosure claims require proof of a duty to disclose, failure to disclose, reliance, and damages. *Morris Aviation, LLC*, 536 F. App'x at 568. Even if Laws could establish through common proof that St. Elizabeth used a variable adjustment and did not disclose its asserted purpose or methodology, that would not establish reliance and injury for all members of the proposed class.[2] Plaintiff alleges that patients relied on St. Elizabeth to employ customary billing practices and did not seek out DRG pricing. Am. Compl., Doc. 41, ¶ 31. Whether a given patient relied on any asserted omission would depend on the

---

[2] Plaintiff has filed a related action, *Mikalauskas v. St. Elizabeth Med. Ctr., Inc.*, No. 24-CI-01855, in the circuit court for Kenton County, Kentucky, in which the court granted a motion to amend the complaint to add class allegations premised on fraud. That decision, however, is not persuasive here. The order principally addresses whether St. Elizabeth had a duty to disclose and concludes that it did. The issue before this Court is different: even assuming that St. Elizabeth had a duty to disclose its billing practices, the individualized proof necessary to establish reliance and injury defeats the predominance of common questions required by Rule 23(b)(3).

information that patient received from St. Elizabeth, providers, or insurers; whether the patient reviewed online pricing or obtained a price estimate; the patient's understanding of anticipated charges and insurance coverage; and whether further disclosure would have affected the patient's decisions or financial position.

The Second Amended Complaint acknowledges that St. Elizabeth posted actual diagnosis prices online and that exit-DRG charges were available on its website. *Id.* Laws correctly argues that a listed price does not necessarily disclose the alleged method by which St. Elizabeth set the price. Doc. 46, PageID 1900–01. But the information available to and received by individual patients remains relevant to reliance. A class wide conclusion that St. Elizabeth employed an undisclosed billing practice would not answer what each patient knew, whether a particular patient relied on the alleged omission, or whether that omission caused injury.

Courts have declined to find predominance where reliance on an asserted misrepresentation or omission is a central issue requiring individual proof. In *Stout*, the Sixth Circuit upheld denial of certification because the factual core of the proposed claims was whether individual members "relied upon false representations or failures to disclose" and the damages "caused by that reliance." 228 F.3d at 718. And in *York*, the district court concluded that reliance was an individualized issue that "will drive the outcome" of claims challenging St. Elizabeth's all-inclusive pricing. 2024 WL 1723073, at *6. It reasoned that class members could have received different representations or possessed different information, such that their claims could produce different results. *Id.* Those authorities apply to Laws' fraudulent-nondisclosure theories.

The implied-covenant claim also does not present predominantly common questions. Under Ohio law, the implied covenant of good faith and fair dealing is part of a contract and does not create an independent cause of action absent breach of an express contractual obligation. *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶¶ 42–44. Plaintiff alleges that St. Elizabeth acted contrary to patients' "reasonable expectations" by changing its billing method without disclosing the change. Am. Compl., Doc. 41, ¶ 81. Yet the Amended Complaint does not identify a common contract or contract term applicable to every putative class member that required St. Elizabeth to use a particular billing method. *See id.* ¶¶ 79–82. Laws instead asserts that additional discovery is necessary to determine whether an express contract exists. Doc. 46, PageID 1904. As pleaded, determining whether the implied covenant was breached would require identifying the agreement, relevant contractual term or discretion, and reasonable expectations associated with each patient's particular transaction.

The unjust-enrichment claims also entail individualized questions central to liability and relief. Laws alleges that St. Elizabeth retained extra money from patients through charges not tied to "actual legitimate line item charges." Am. Compl., Doc. 41, ¶¶ 84, 90. An Ohio unjust-enrichment claimant must show that the plaintiff conferred a benefit on the defendant, that the defendant knew of the benefit, and that retention of the benefit would be unjust. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984). Restitution is limited to the "reasonable value of the benefit conferred." *FedEx Corp. Servs., Inc. v. Heat Surge, LLC*, 2019-Ohio-217, ¶ 12 (citation omitted).

Laws proposes calculating recovery by reviewing the allegedly added AIC charge on each patient's bill and awarding each class member a proportionate amount of the asserted overbilling. Doc. 46, PageID 1902. But the AIC line item reflects an amount billed; it does

not alone establish whether the patient or another entity paid the charge, the amount St. Elizabeth received and retained, or the amount of any benefit retained at the patient's expense. Laws alleges that the variable adjustment was designed to obtain maximum available insurance reimbursement. Am. Compl., Doc. 41, ¶¶ 19, 28–40. Defendant contends that the amount of any economic loss depends on the adjustment and the particular application of each patient's insurance plan. Doc. 45-1, PageID 1855–56. Thus, resolving unjust enrichment would require individualized inquiry into the payment source, coverage terms, insurance adjustments, patient responsibility, sums actually paid or still owed, and the amount, if any, retained by St. Elizabeth at the patient's expense.

Laws is correct that individualized damages do not necessarily defeat predominance. *See*, *e.g.*, *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 2418738, at *4 (S.D. Ohio June 5, 2017). But individual damages issues support denial where, as here, they accompany substantial individualized issues as to liability. *Woodall*, 2021 WL 5298537, at *8. Laws identifies no common proof that would establish reliance and causation for the fraudulent-nondisclosure claims, an applicable contractual obligation for the implied-covenant claim, or the benefit conferred and retained for the unjust-enrichment claims. The Second Amended Complaint therefore does not plausibly show that common questions predominate under Rule 23(b)(3).

*3. <u>Superiority</u>*

Rule 23(b)(3) also requires Laws to establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant considerations include class members' interest in individually controlling separate actions, other litigation concerning the controversy, "the desirability of concentrating

the litigation in this forum", and likely difficulties in managing a class action. *Id.*; *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757–58 (6th Cir. 2013).

Laws argues that a class action is superior because most putative members' claims are too small to make individual litigation economically practical, while persons with sufficiently large claims may opt out. Doc. 46, PageID 1900. This consideration may favor class treatment where small individual recoveries would otherwise provide little incentive for separate litigation. But superiority is not satisfied for many of the same reasons predominance is lacking. *See Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106 (6th Cir. 2022). As *Tarrify* explains, predominance and superiority problems arise "most acutely, when a controlling issue requires individualized determinations" that are ill-suited "for class wide proof." *Id.* Here, the remaining claims would require individualized determinations concerning reliance and causation, the relevant contractual terms and expectations, whether each patient conferred a benefit on St. Elizabeth, and the extent of any resulting damages or restitution. *See* Am. Compl., Doc. 41, ¶¶ 31, 79–92, 107–21.

Those individualized issues would make a class action difficult to manage and would leave each proposed member with a substantial interest in controlling the prosecution of his or her own claim. *See Vassalle*, 708 F.3d at 757–58; *Tarrify*, 37 F.4th at 1106. Plaintiff's assertion that some claims may be too small to litigate individually does not overcome that manageability problem, particularly where Plaintiff does not identify the anticipated claim values or propose a workable method for resolving the claims' individualized elements collectively. Plaintiff therefore has not plausibly alleged that a class action is superior to other available methods of adjudication.

4. *Ascertainability*

A proposed class must be defined by objective criteria that permit the Court to determine who is included and who is excluded. *Young*, 693 F.3d at 538. Ascertainability is lacking when determining membership would require individualized assessments rather than reference to administratively manageable, objective records. *Sandusky Wellness Center, LLC*, 863 F.3d at 471–72. As discussed above, membership cannot be determined by inpatient status alone. It turns on individualized billing, insurance, reimbursement, and payment circumstances. *See* Am. Compl., Doc. 41, ¶¶ 19, 28–40, 84, 87, 90, 92. Plaintiff has therefore not plausibly alleged an ascertainable class.

5. *Adequacy of Representation*

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry considers whether the named plaintiff has interests antagonistic to those of the class and whether proposed class counsel are qualified, experienced, and able to conduct the litigation. *See Vassalle*, 708 F.3d at 757; Fed. R. Civ. P. 23(g)(1)(A). The parties extensively dispute whether counsel's performance in *York* establishes inadequacy here. St. Elizabeth emphasizes discovery delays, missed deadlines, amendments, and judicial criticism in that case. Doc. 45-1, PageID 1857–61; Doc. 47, PageID 1921–23. Laws explains that the delays were attributable to circumstances surrounding prior counsel, that Messrs. Croskery and Statman acted diligently after joining the matter, and that counsel have experience in class litigation. Doc. 46, PageID 1890–92.

The Court need not resolve those fact-intensive disputes. Mr. Croskery, whose performance in *York* is the principal focus of the parties' adequacy arguments, has withdrawn

as counsel in this action. Doc. 50. The Court therefore declines to decide whether his conduct in a different case would independently preclude him from serving as class counsel here. And because Plaintiff has not plausibly alleged typicality, predominance, superiority, or ascertainability, those independent deficiencies require striking the class allegations. *See* Fed. R. Civ. P. 23(a), (b)(3). The Court need not reach adequacy as an additional ground.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant St. Elizabeth Healthcare, Inc.'s Motion to Strike Class Allegations (Doc. 45). The class allegations in Plaintiff's Second Amended Complaint (Doc. 41) are **STRICKEN**.

**IT IS SO ORDERED.**

September 28, 2026

Jeffery P. Hopkins
United States District Judge